UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

HUGH BRIAN HANEY,

          Defendant.

No. 19 Cr. 541 (JSR)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
# THE DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

                          GEOFFREY S. BERMAN
                          United States Attorney for the
                          Southern District of New York
                          One Saint Andrew's Plaza
                          New York, New York 10007

Tara M. La Morte / Samuel Raymond
Assistant United States Attorneys
    *Of Counsel*

The Government respectfully submits this memorandum in opposition to the emergency motion filed by the defendant, Hugh Brian Haney ("Haney" or the "defendant") for compassionate release pursuant to 18 U.S.C. § 3582(c). Because less than 30 days have elapsed since Haney's request for a reduced term of imprisonment was received by the Warden at the Metropolitan Detention Center ("MDC"), his Bureau of Prison ("BOP") facility, this Court lacks statutory authority to grant Haney's request to modify his sentence and have him transferred immediately to home confinement pursuant to 18 U.S.C. § 3582(c). Even assuming *arguendo* that this Court had the authority to entertain Haney's motion, his arguments regarding COVID-19 are speculative, and do not establish that "extraordinary and compelling circumstances" exist as is necessary to justify his immediate release to home confinement.

## BACKGROUND

### I. Factual Background

#### A. Haney's Guilty Plea and Sentencing

On November 6, 2019, Haney pleaded guilty to money laundering charges pursuant to a *Pimentel* letter. These charges arose from Haney's activities beginning in 2011 and 2012, when he helped operate "Pharmville," a virtual narcotics retail operation operating on the darkweb Silk Road marketplace. Through Pharmville, Haney sold and advertised fentanyl, oxycodone, valium, and other illegal substances. Haney committed these serious crimes while on supervised release for a prior federal narcotics conspiracy charge in the District of Massachusetts, similarly involving the sale of narcotics over the internet. Unlike his prior drug business, however, Haney's Pharmville took advantage of the anonymity offered by Silk Road and of its principal method of payment, Bitcoin, to avoid any legal consequences for his actions during the life of Pharmville and Silk Road. His scheme ultimately failed in 2018, when Haney attempted to reap the enormously

valuable profits of his illicit narcotics operation by transferring Bitcoin to "fiat" currency and lying about the illegal origins of his funds.

On February 12, 2020, this Court sentenced Haney to 42 months' imprisonment, along with a three-year term of supervised release, a fine of $10,000, and substantial forfeiture of approximately $19,000.000. In imposing that sentence, the Court observed that Haney had engaged in "very serious misconduct" that "he knew was . . . a blatant violation of law." (Tr. dated Feb. 12, 2020, at 23). Accordingly, the Court reasoned that a "a sentence somewhat below five years is called for, though nothing like what defense counsel, who is as extreme in his way as the government is allegedly extreme in theirs . . . because that's his job." (*Id.* at 24). The Court also acknowledged that it could not "order" that Haney be designated to a particular BOP facility, but could recommend it, and did so. (*Id.* at 26).

Haney has been incarcerated at the MDC since July 18, 2019, and thus has approximately 27 months' imprisonment left to serve (assuming he earns good time credit). BOP has designated Haney to a permanent facility, although the Government is unaware of any imminent plans to transfer him.

B. **Haney's Application to the BOP for Compassionate Release**

On March 26, 2020, Haney's counsel submitted a letter to the Warden of the MDC requesting BOP to grant a reduction in Haney's sentence pursuant to 18 U.S.C. § 3582. (*See* Ex. C to Haney's Motion). According to the letter, Haney seeks a reduction in sentence based on his age, which places him at a greater risk of contracting and/or suffering from COVID-19. Haney's request did not identify any additional heightened risk factors, such as an underlying medical condition.

C. **Haney's Emergency Motion for Compassionate Release**

On March 31, 2020, Haney's counsel filed with the Court an Emergency Motion for

Compassionate Release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that the Court release him to home confinement immediately, and to be allowed to serve the remainder of his sentence at home. ("Mot."). Haney requests such relief because his age (61 years old) renders him more vulnerable to COVID-19.

## ARGUMENT

**I.   Standards Governing Compassionate Release Under 18 U.S.C. § 3582(c)**

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Goode*, No. 14 Cr. 810 (CM), 2020 WL 58272, *1 (S.D.N.Y. Jan. 6, 2020); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, *1 (S.D.N.Y. Dec. 9, 2019). Prior to the enactment of the First Step Act, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the BOP asking that the court consider such modification. *See, e.g., United States v. Goode*, 2020 WL 58272 at *1 (citing U.S.S.G. § 1B1.13 Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement) (Effective Nov 1, 2006; amended effective Nov. 1, 2007; Nov 1, 2010; Nov. 1, 2016; Nov. 1. 2018)); *Stewart v. United States*, 13 Civ. 5279 (JGK), No. 02 Cr. 395 (JGK), 2013 WL 4044756, *3-6 (S.D.N.Y. Aug. 9, 2013); *United States v. Iosifidis*, No. 13 Cr. 170 (JFK), 2016 WL 3267329, *2 (S.D.N.Y. June 9, 2016).

On December 21, 2018, Congress passed the First Step Act, Pub. L. No. 115-391, which amended 18 U.S.C. § 3582(c)(1) to permit a court to consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner:

> The court <u>may not modify a term of imprisonment once it has been imposed except that</u>, . . . the court, upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

4

> bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, <u>may reduce the term of imprisonment…</u>

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines.  The court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i); or that the defendant is at least 70 years old and has served at least 30 years in prison, among other things.  18 U.S.C. § 3582(c)(1)(A)(ii).  In either case, the proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons exist."  U.S.S.G. § 1B1.13 Application Note 1.  These include an assessment of the defendant's medical condition and his or her age:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,

5

       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 Application Note 1.  Haney's motion is predicated on his age, in combination with the present COVID-19 pandemic.

    BOP Program Statement No. 5050.50, "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582, 4205(g)," sets forth the administrative procedures that the BOP follows when considering inmate requests, as well as the substantive criteria used by the BOP to evaluate whether a motion for a sentence modification is appropriate. As is relevant here, an elderly defendant may be considered for a reduced sentence if the following criteria are met:

    (i)    Age 65 and older;

    (ii)    Suffer from chronic or serious medical conditions related to the aging process;

    (iii)    Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility;

    (iv)    Conventional treatment promises no substantial improvement to their mental or physical condition;

    (v)    Have served at least 50% of their sentence.

U.S. Department of Justice, Federal Bureau of Prisons, Program Statement, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582, 4205(g), OPI OGC/LCI, No. 5050.50 (Jan. 17, 2019).

    The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that

decrease"); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

II.  **This Court Presently Lacks Authority to Grant Haney's Request Under 18 U.S.C. § 3582(c), as He Has Not Exhausted Mandatory Administrative Remedies**

In his submission, Haney concedes that he has failed to exhaust his administrative remedies. Because such exhaustion is mandatory, the Court lacks the authority to grant compassionate release at this time.

As discussed above, under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances.  Pursuant to the so-called compassionate release provision, a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).  By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in

7

the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted *all* administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act, for example, there is no statutory qualifier that a defendant need only exhaust all "*available*" remedies. [1] Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). For this reason, as Judge Cote has explained, this court lacks the authority to grant the defendant's motion at this time. *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020); *see also United States v. Hernandez*, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (finding that the compassionate release provisions of the First Step Act did not apply because "Mr. Hernandez does not appear to have sought any [ ] relief within the Bureau of Prisons, let alone exhausted his administrative remedies").

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that

---

[1] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule). Here, no such exception exists in the statute. Accordingly, the PLRA cases relied on by Haney cannot bear the weight he attaches to them. (*See* Mot. at 5).

the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922, at * (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* The vast majority of district courts have also required exhaustion despite COVID-19 claims.[2] These decisions are consistent with the plain language of Section 3582(c).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

---

[2] *See United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020); *United States v. Clark,* No. 17 Cr. 85 (SDD), 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart,* No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). Both *Perez* and *Colvin* relied on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), which as discussed further below, is inapposite because it involves judge-made exhaustion doctrine.

This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The court may of course review those judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment.

Haney cites *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), in support of sidestepping these mandatory exhaustion requirements, but *Barr* is inapposite. That case involved the invocation of a *judge-made* exhaustion doctrine. *See id.* at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); *id.* at 118 ("Although not mandated by Congress, [exhaustion] is

consistent with congressional intent."). Thus, it was appropriate for the court to consider judge-made exceptions. *See Ross*, 136 S. Ct. at 1857. But this case involves a mandatory, statutory exhaustion requirement, which allows for no such exceptions. *See Bastek*, 145 F.3d at 95 (rejecting application of various exceptions to exhaustion requirement where clear statutory requirement exists); *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004) (rejecting futility exception to exhaustion requirement in Immigration and Nationality Act because such an exception is "simply not available when the exhaustion requirement is statutory," as opposed to judicial); *United States v. Gonzalez-Roque*, 301 F.3d 39, 46-48 (2d Cir. 2002) (rejecting argument that statutory exhaustion requirement for collaterally attacking a removal order should be excused in light of defendant's *pro se* status in removal proceedings).

To be sure, *Barr* states that: "Even where exhaustion is seemingly mandated *by statute or decisional law*, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of categories.'" *Barr*, 925 F.3d at 118 (emphasis added) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). But the inclusion of the phrase "by statute" is not supported by the citation that follows. *McCarthy* is another case involving a judge-made exhaustion requirement. *See McCarthy*, 503 U.S. at 152 ("Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim."). It thus provides no support for the notion that exhaustion mandated "by statute" is not absolute. *See Bastek*, 145 F.3d at 95 (rejecting application of *McCarthy* exceptions in a statutory case). Further, when *Barr* goes on to discuss three recognized exceptions to exhaustion, it is describing three exceptions recognized in *McCarthy* in the judge-made context. But as the Supreme Court made crystal clear in *Ross*, this ignores the critical distinction between statutory and judge-made exhaustion requirements. Given that *Washington* was a judge-made exhaustion case, its statement that

11

exhaustion mandated "by statute" is "not absolute" is dicta, and cannot supplant the clear statements to the contrary in cases like *Ross* and *Bastek*.

*Mathews v. Eldridge*, 424 U.S. 319 (1976) and *Bowen v. City of New York*, 476 U.S. 467 (1986) are similarly inapposite. In each case, the Court considered a provision of the Social Security Act providing that a claimant could bring a civil action challenging a decision by the Secretary of Health, Education and Welfare only after "a final decision of the Secretary made after a hearing." 42 U.S.C. § 405(g). The Court construed this to contain two requirements: (1) a non-waivable, "jurisdictional" element that a claim shall have been brought before the Secretary, and (2) a waivable element that the remedies prescribed by the Secretary be exhausted. *Eldridge*, 424 U.S. at 328. In *Eldridge*, the claimant argued that the Due Process Clause of the Fifth Amendment requires that prior to termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing. In evaluating whether the denial of his claim was sufficiently "final" so as to "satisfy the exhaustion requirement," the Court noted that (1) his Due Process claim was entirely "collateral" to his substantive claim of entitlement, and (2) his claim to a predeprivation hearing as a matter of constitutional right "rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.* at 330-31. The Court thus concluded that the denial of the claimant's request for benefits "constitutes a final decision" for purposes of the exhaustion requirement. *Id.* at 332. Thus, *Eldridge* did not excuse an exhaustion requirement; it found it to have been satisfied. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000) ("*Eldridge*, however, is a case in which the Court found that the respondent *had followed* the special review procedures set forth in § 405(g), thereby *complying with*, rather than *disregarding*, the strictures of § 405(h).").

In *Bowen*, the Court stated that *Eldridge* established a two-part test that is satisfied when "the claims were collateral to any claim for benefits, and the harm imposed by exhaustion would be irreparable." 476 U.S. at 476. The Court held that the particular claims in that case also satisfied the *Eldridge* test, and thus exhaustion was not required. *Id.* at 483-84. However, the Court went on to use language suggesting not that the requirement of a "final decision" (and thus the exhaustion requirement) had been *satisfied*, but rather that it could be "excused" under the circumstances set forth in *Eldridge*, as well as when a court deems appropriate "as guided by the policies underlying the exhaustion requirement." *Id.* 485. These statements in *Bowen*, which go beyond *Eldridge* and are arguably dicta, are in stark tension with *Ross* and other more recent Supreme Court precedents. Indeed, they set forth precisely the sort of "freewheeling approach to exhaustion" that the Supreme Court has since repudiated. *Ross*, 136 S. Ct. at 1350.

As the Court has made clear numerous times since *Eldridge* and *Bowen*, courts are "not free to rewrite the statutory text" when Congress has "barred claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 111 (1993). And where Congress has mandated exhaustion, the Court has rejected attempts to rely on the policies of administrative exhaustion, like those cited in *Bowen*, or the notion of a futility requirement. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

Thus, particularly in light of subsequent precedent, *Eldridge* and *Bowen* stand at most for the proposition that the specific statutory exhaustion requirement at issue in those cases can be excused by the court where the two-part *Eldridge* test is satisfied. But by no means do they stand for the proposition that *all* statutory exhaustion requirements may be excused, let alone one as unambiguous as Section 3582(c). Indeed, when the Supreme Court recently reiterated the two-part *Eldridge* test, it emphasized that exhaustion schemes should be interpreted "with a regard for

13

the particular administrative scheme at issue" and that the SSA is "unusually protective of claimants." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774, 1776 (2019). *Smith* and *Ross* both make clear that the analysis of whether any given statutory exhaustion provision allows for exceptions is unique to that statute. While one statute's text and history may give judges leeway to make exceptions, another may not. *Ross*, 136 S. Ct. at 1858 n.2; *see also Smith*, 139 S. Ct. at 1776; *Illinois Council on Long Term Care, Inc.*, 529 U.S. at 14 (while interpreting one statutory exhaustion provision, rejecting reliance on a case interpreting a different statutory exhaustion provision because the outcome "turned on the different language of that different statute").[3]

The remaining authorities on which Haney relies are equally unavailing. For instance, in the context of habeas claims for state convictions in *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (exhaustion in context of appeal of denial of habeas corpus petition under 28 U.S.C. § 2254) (cited at Mot. at 4), the court relied upon long-standing Supreme Court precedent that exhaustion in that context is "essentially a matter of federalism and comity," and concluded that the state's interests in comity and federalism had already been served given that it had the first opportunity to examine the defendant's federal constitutional claims. *See id.* (citing *Granberry v. Greer*, 481 U.S. 129 (1987) and *Ex parte Hawk*, 321 U.S. 114 (1944)). In *United States v. Huneeus*, No. 19 Cr. 10117 (IT) (D. Mass. Mar. 17, 2020) (Dkt. No. 642) (cited at Mot. at 3), the court granted defendant's *unopposed* emergency motion based on COVID-19 and underlying health concerns; there, the Government did not oppose the defendant's request on the basis of statutory exhaustion because the defendant had only two weeks left in his sentence, and thus

---

[3] It bears noting that even if *Eldridge* and *Bowen* were applicable here, the two-part test set forth therein would not be satisfied. The defendant's claims before this court are not collateral to the claims he is raising with the BOP – they are one and the same.

waiting for the 30 day period would in fact be futile: the defendant would be released prior to the expiration of that period. And in *United States v. Arberry*, No. 15 Cr. 594 (JPO) (S.D.N.Y. Nov. 12, 2019) (Dkt. No. 84) (cited at Mot. at 3), the Government did not oppose the request of a terminally ill defendant, who had approximately two months left on his sentence; that defendant was released for the last few weeks of his life. In neither case did the Government raise, nor did the Court have occasion to opine on, the question of statutory exhaustion and the Court's jurisdiction under § 3582.

In sum, the analysis of a statutory exhaustion requirement must "begin[] with the text" and utilize "ordinary interpretive techniques." *Ross*, 136 S. Ct. at 1856 and 1858 n.2. As set forth above, the text of Section 3582(c) provides for no exceptions. Enforcing the statutory requirement providing BOP with 30 days to evaluate the requests is required by the law, helps ensure that these applications are treated consistently and that decisions are reached with the benefit of medical and other records from BOP. Haney has indisputably not exhausted statutorily-mandated administrative remedies, and thus his motion must be denied.

### III. Haney's Risk of Contracting COVID-19 Is Not an "Extraordinary and Compelling" Reason Justifying Release Pursuant to 18 U.S.C.

Even if the defendant had met the threshold exhaustion requirement for filing--which he has not—his motion should be denied because he has not demonstrated "extraordinary and compelling" reasons that his sentence should be reduced below what the Court already imposed. As explained above, a defendant's age may justify a sentencing reduction if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 Application Note 1 (a). Haney–a 61 year

old man with apparently no specific deterioration who has served less than a year, less than 25% of his sentence–does not satisfy *any* of these prongs.

Haney seeks relief based on the potential that he might be exposed to and contract COVID-19 while in prison, and that his age places him at greater risk with respect to the virus. He does not contend that he has yet contracted the virus, or that he has been exposed to the virus, or that he has experienced symptoms associated with the virus.  The Government acknowledges that the defendant's age subjects him to a higher risk of difficulty in the event he contracts the virus, but that, alone is insufficient to constitute an "extraordinary and compelling" reason justifying a truncated sentence.

Moreover, the BOP in general, including the MDC, have taken a number of significant steps to mitigate the spread of the virus in the prison systems, including increased screening of inmates, restrictions on visitors, restrictions on group gatherings, and mandated social distancing. On March 31, 2020, the BOP announced Phase V of its COVID-19 Action Plan, which mandates, among other things, that for fourteen days, all inmates will be secured in their cells/quarters to further decrease the spread of the virus and the risk to other inmates.  These are significant actions.

Additionally, it is instructive to note that courts throughout this district (including Your Honor) have recently decided applications for bail predicated on COVID-19, including pursuant to 18 U.S.C. § 3142(i), which allows for "temporary release" if such release is for a "compelling reason."  In many cases, such bail applications have been denied, even for individuals with underlying medical conditions or otherwise on the "high-risk" lists at their various prison facilities, like Haney.  *See United States v. Rivera*, 20 Cr. 6 (S.D.N.Y. Mar. 25, 2020) (Rakoff, J.) (denying bail application for inmate detained on controlled substance charge who had prior

16

history of asthma); *see also, e.g.*, *United States v. Ramon Ramirez*, 19 Cr. 395 (S.D.N.Y. April 1, 2020) (Castel, J.) (denying pretrial bail for defendant charged with murder for hire despite diabetes); *United States v. Chambers*, No. 20-CR-135, 2020 WL 1530746 (S.D.N.Y. March 31, 2020) (Furman, J.) (denying pretrial bail for defendant charged with racketeering conspiracy and attempted assault in aid of racketeering despite asthma); *United States v. Michael Valdez*, 19 Cr. 883 (S.D.N.Y. March 27, 2020) (Oetken, J.) (denying pretrial bail for defendant charged with sex trafficking and kidnapping offenses despite asthma); *see also United States v. Estevez Gonzalez*, 19 Cr. 123 (S.D.N.Y. Mar. 25, 2020) (Buchwald, J.) (denying bail application for inmate with potential asthma); *United States v. Fofana*, 19 Cr. 447 (S.D.N.Y. Mar. 30, 2020) (Cote, J.) (denying bail for defendant with asthma); *United States v. White*, 19 Cr. 536 (S.D.N.Y. Mar. 25, 2020) (Castel, J.) (denying bail application for inmate with history of whooping cough); *United States v. Roberson*, 19 Cr. 914 (S.D.N.Y. Mar. 26, 2020 (Buchwald, J.) (denying bail application for inmate based on COVID-19); *United States v. Steward*, 20 Cr. 52 (S.D.N.Y. Mar. 26, 2020) (Cote, J.) (denying bail for defendant on BOP's "high-risk" list); *United States v. Chavis*, 19 Cr. 620 (S.D.N.Y. Mar. 27, 2020) (Cote, J.) (denying post-plea bail of inmate based on COVID-19); *United States v. Marte*, 19 Cr. 795 (S.D.N.Y. Mar. 27, 2020) (Stein, J.) (denying bail for defendant with history of smoking and Percocet addiction); *United States v. Knight,* 20 Cr. 216 (S.D.N.Y. March 27, 2020) (Seibel, J.) (denying pretrial bail for defendant charged with narcotics offense and ammunition possession despite defendant's age and underlying health condition);  *United States v. Decker*, 20 Cr. 104 (S.D.N.Y. March 27, 2020) (Roman, J.) (denying pretrial bail based on grounds of dangerousness despite defendant's age and underlying health condition); *United States v. Anderson*, 19 Cr. 771 (S.D.N.Y. March 27, 2020) (Briccetti, J.) (denying bail pending further proceedings related to violation of supervised release); *United*

17

*States v. Nivar*, 19 Cr. 902 (S.D.N.Y. March 19, 2020) (McMahon, C.J.) (denying pretrial bail based on COVID-19); *United States v. Alvarez*, 19 Cr. 622 (S.D.N.Y. March 24, 2020) (Cote, J.) (denying pretrial bail based on COVID-19); *United States v. Bradley*, 19 Cr. 632 (S.D.N.Y. March 24, 2020) (Daniels, J.) (denying pretrial bail despite defendant's claim that his age (58) and health conditions (recent stroke and high blood pressure) justified release due to the risk of contracting COVID-19); *United States v. Nasir*, 20 Cr. 78 (S.D.N.Y. Mar. 30, 2020) (Torres, J.) (denying pretrial bail application for inmate based on COVID-19). And each of these bail denials were for defendants who were subject to bail – in other words, they could be released temporarily under 3142(i) but then returned for prison after the COVID-19 crisis abides and for any potential sentence. Haney, however, is requesting that he be released free and clear from incarceration after serving less than *25% of his sentence*.[4]

Finally, even if the defendant had shown that his age was such that he was eligible for compassionate release, the same § 3553(a) factors that the Court considered in imposing the original sentence continue to justify that sentence today. As this Court acknowledged at sentencing, the defendant committed a very serious offense involving the sophisticated

---

[4] The Government notes an in a Memorandum dated April 3, 2020, a copy of which is attached hereto, the Attorney General made a "finding" pursuant to the authority granted under 18 U.S.C. § 3624(c)(2), as amended on March 27, 2020, by the passage of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. Specifically, the Memorandum directs the Director of BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with inmates incarcerated at [specified BOP institutions, not including the MDC] and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Those particularly vulnerable inmates are to be immediately considered for transfer to home confinement. As of the date of this filing, this Office is unaware whether BOP has determined MDC to be a "similarly situated facility, *i.e.* is considered to be experiencing significant levels of infection. The Memorandum underscores the need to protect the public by making careful, individualized determinations about the circumstances of release, and in particular, to weight whether to require a 14-day BOP quarantine before release or in appropriate cases to permit quarantine in the residence to which individuals are being transferred.

laundering of Bitcoin derived from sales of distribution quantities of oxycodone and dangerous drugs over the dark web.  Nor was this the defendant's first encounter with the legal system.  He had a prior serious narcotics offense for a less sophisticated version of the scheme.  The 42-month sentence that the Court imposed remains justified here.  The reduction now requested by the defendant to home detention after serving approximately 9 months of his sentence would entirely fail to satisfy any of the purposes of sentencing and would not be appropriate.  *See, e.g.*, *United States v. Credidio*, No. 19 Cr. 111 (PAE), ECF No. 62 (S.D.N.Y. Mar. 30, 2020) (denying motion for compassionate release and reduction of sentence to home confinement in light of COVID-19 pandemic for 72-years old defendant sentenced in Feb. 2020 to 33 months' imprisonment because lengthy term of imprisonment was required for reasons stated at sentencing).  The 42-month sentence the Court originally imposed should stand.

## CONCLUSION

For the foregoing reasons, the defendant's motion for a reduction in sentence is procedurally barred, and in any event he has failed to meet his burden of demonstrating that a reduction is warranted. The motion should be denied

Dated: New York, New York
April 6, 2020

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

By:    /s/_____
       Tara La Morte / Samuel Raymond
       Assistant United States Attorneys
       Tel.: 212-637-1041

cc:     Martin Cohen, Esq. (via e-mail)